**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
JASON LEOPOLD, et al.,                    )
                                                    )
                    Plaintiffs,                     )
                                                    )
        v.                                          )        Civil Action No. 21-cv-581 (CJN)
                                                    )
UNITED STATES DEPARTMENT OF        )
TRANSPORTATION, et al.,                   )
                                                    )
                    Defendants.                    )
_____)

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

        Defendants, the United States Department of Transportation and Federal Aviation Administration, move for summary judgment pursuant to Federal Rule of Civil Procedure 56. In support of this motion, the Court is respectfully referred to Defendant's accompanying memorandum of points and authorities and attached exhibits.

Dated: May 17, 2023                       Respectfully submitted,

                                                    BRIAN M. BOYNTON
                                                    Principal Deputy Assistant Attorney General
                                                    Civil Division

                                                    MARCIA BERMAN
                                                    Assistant Branch Director

                                                    _/s/ Liam C. Holland_____
                                                    LIAM C. HOLLAND
                                                    Trial Attorney
                                                    United States Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    1100 L Street, N.W.
                                                    Washington, D.C. 20005
                                                    Tel: (202) 514-4964
                                                    Email: liam.c.holland@usdoj.gov

                                                    _Counsel for Defendant_

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JASON LEOPOLD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-cv-581 (CJN) |
| | ) | |
| UNITED STATES DEPARTMENT OF TRANSPORTATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 7(h) and Paragraph 9 of this Court's Standing Order for FOIA Cases, Defendants respectfully submit this Statement of Material Facts Not in Dispute in support of Defendants' Motion for Summary Judgment.

1. On January 12, 2021, Plaintiffs submitted a Freedom of Information Act ("FOIA") request to the Federal Aviation Administration ("FAA"). Declaration of Jessica Sypniewski ("Sypniewski Decl.") ¶ 5.

2. The request sought information pertaining to the January 6, 2021 events at the U.S. Capitol. *Id.*

3. In response to Plaintiffs' FOIA request, FAA searched for responsive materials. *Id.* ¶ 6.

4. Plaintiffs do not dispute the adequacy of FAA's search. Joint Status Report, ECF No. 15 (Sept. 9, 2022).

5. On November 5, 2021, FAA issued an interim response to Plaintiffs' FOIA request and produced records. Sypniewski Decl. ¶ 7.

6. On June 16, 2022, FAA produced additional responsive records to Plaintiffs. *Id.* ¶ 8.

7.  Plaintiffs do not dispute the propriety FAA's withholding of responsive information under FOIA Exemptions other than FOIA Exemption 5.  Joint Status Report, ECF No. 15 (Sept. 9, 2022).

8.  After the June 2022 production, Plaintiffs inquired whether the progress of the January 6th prosecutions, as well as the January 6th hearings, have led FAA to reconsider any of their withholdings.  Sypniewski Decl. ¶ 9.

9.  In November 2022, FAA issued a supplemental response and produced additional information.  *Id*. ¶ 11.

10. In April 2023, FAA issued a second supplemental response and produced additional information.  Declaration of Katherine Howard ("Howard Decl.") ¶ 10

11. All information responsive to Plaintiffs' FOIA request that FAA withheld under FOIA Exemption 5 is included in several records totaling twenty-three pages.  Sympniewski Decl. ¶¶ 12-13; Howard Decl. ¶¶ 15-16; Bates Number 0001-0023.

12. On January 9, 2021, an FAA employee sent to the FAA Administrator an email with the subject "Capital Protest Email Response."  Sympniewski Decl. ¶ 13; Bates Number 0007-08.

13. On January 11, 2021, former FAA Chief of Staff, Ms. Stubblefield, forwarded the email to several other individuals in FAA leadership, including the Acting Chief Counsel (Mark Bury), Deputy Administrator for the Office of Communications (Jeanie Shiffer), and the Deputy Chief of Staff/Senior Advisor to the Administrator (Danny Blum).  Ms. Stubblefield requested these individuals' opinions on how to best advise Administrator Dickson on how or if to respond to the employee's email.  Sympniewski Decl. ¶ 14.

14. Ms. Stubblefield chose these recipients based on the perspectives she believed they would offer in light of their positions in the FAA.  She included the Acting Chief Counsel for legal advice on proposed responses.  She included Ms. Shiffer for input from the communications perspective.  She likewise included Mr. Blum for his perspective based on his role as a senior advisor to the former Administrator, since the

Administrator would likely ultimately issue a response if determined necessary or appropriate.  Sympniewski Decl. ¶ 15.

15. The information withheld under Exemption 5 at Bates Number 0001-04 consists of communications proposing advice and opinions on whether and how the Administrator should respond to the email.  *Id.* ¶¶ 22-26.  Each individual in the e-mail thread gave their own opinions on how the Administrator should respond in light of current sensitivities.  *Id.* ¶ 26.

16. The information withheld under Exemption 5 at Bates Number 0001-04 consists of communications that predated Administrator Dickson's decision with respect to whether and how to respond to the employee's email.  *Id.* ¶ 27.

17. When conducting its initial review, the FOIA Office and the Administrator's Office staff carefully reviewed the emails and segregated all information that either did not fall under a FOIA exemption, or that would not cause foreseeable harm if released.  *Id.* ¶ 30.

18. The FOIA Office and the Administrator's Office staff ensured that questions, purely factual information, dates, names of FAA executives seeking and giving advice, and other non-exempt information were all released in an interim production.  *Id.*

19. Jessica Sypniewski, members of her staff, and FOIA office staff conducted a second line-by-line re-review of the e-mail records after Plaintiffs asked FAA to reconsider its redactions.  *Id.* ¶ 31.

20. After the re-review, FAA issued a supplemental production in November 2022 consisting of additional information released in the interest of transparency.  *Id.* ¶ 32.

21. FAA is often placed in a position to have to quickly react to politically charged events like the events of January 6, 2021, and determine how best to position the FAA workforce to remain focused on the FAA's safety mission during such events.  *Id.* ¶ 34.

22. Releasing the information withheld pursuant to Exemption 5 at Bates Number 0001 to 0004 would have a profound chilling effect on future communications addressing how

the Administrator should respond to an email from employees raising sensitive issues about politically-charged events because FAA employees and executives alike will be less likely to engage in these frank, open, discussions. *Id.* ¶ 35.

23. Prior to January 11, 2021, House Transportation and Infrastructure Committee Chairman Peter DeFazio requested a call with Administrator Dickson to obtain information about how the FAA was addressing disruptive passenger events on flights and whether there is anything to do to deny access to flights by individuals who participated in the January 6, 2021 events at the U.S. Capitol. Howard Decl. ¶ 27.

24. The fourteen pages at Bates Number 0010-0023 consist of an email and an attached memorandum and an email with an earlier draft version of the same memorandum. *Id.* ¶ 16.

25. The email containing the later version of the memorandum (located at Bates Number 0010) was sent to then-FAA Administrator Steve Dickson from then-FAA Chief of Staff Angela Stubblefield. *Id.* ¶ 17.

26. Ms. Stubblefield sent the email to former Administrator Dickson to brief and prepare him for the call with Representatives DeFazio and Larson regarding unruly and disruptive passenger behavior on U.S. airline flights. *Id.* ¶ 17.

27. The withheld information in both drafts of the memorandum predated Administrator Dickson's response to the congressional inquiry and any final decision by FAA with respect to how to deal with these unruly/disruptive passengers. *Id.* ¶ 28.

28. The memorandum (located at Bates Number 0011-0017), titled "Call with Chairman DeFazio and Subcommittee Chairman Larsen to discuss the uptick in disruptive passenger events in the last week and the anticipation of more in the days leading up to the Presidential inauguration" was an internal FAA briefing to Administrator Dickson and remained an internal FAA briefing for agency leadership. At no time was any external-FAA recipient forwarded the memo. *Id.* ¶ 18.

29. The limited redactions made pursuant to FOIA Exemption 5 in that memorandum include FAA Deputy Assistant Administrator of Government and Industry Affairs Katherine Howard's speculation based on conversations she had with Congressional committee staff and FAA staff. The redacted information includes her take on how various airline industry advocacy groups would want to help lower the number and impacts of unruly passenger events on U.S. airline flights. *Id*. ¶ 19.

30. The information withheld from Plaintiffs pursuant to Exemption 5 in the memorandum consists of Ms. Howard's speculation of background on stakeholder positions that she made while drafting the memorandum for Administrator Dickson to prepare him for his response to Representatives DeFazio and Larson during his call with them. *Id*. ¶ 21.

31. It includes Ms. Howard's own speculation on and interpretation of industry stakeholder positions on "on fly lists," sharing of information about unruly passengers, and her perceptions of their willingness to work with Members of Congress on providing security for Members while in airport terminals. *Id*. ¶ 31.

32. Ms. Howard's inclusion of this information reflected her judgment regarding what would be of particular interest to Representatives DeFazio and Larsen and her judgment regarding the most likely groups to be the subject of questions from the Representatives. Accordingly, her selection of the stakeholder group positions for inclusion in the memorandum was an exercise of her judgment as to what was significant to the issue being addressed. *Id*. ¶ 24.

33. Ms. Howard and her staff frequently prepare similar memorandums for agency leadership to brief them on a multitude of events, including meetings with Members of Congress. *Id*. ¶ 21

34. These memorandums are often open and frank so that agency leadership has a full and complete understanding of current event and situations that they may be asked to speak about in these meetings. *Id*.

35. Such memorandums are typically not shared outside the FAA as they are solely for the benefit of FAA leadership. *Id.*

36. The redacted portions of the memorandum described in the Howard Declaration has not been shared with any party outside of a few FAA employees with a need to know its contents. *Id.*

37. The redacted information in the memorandums includes Ms. Howard's speculation and thoughts based on her professional opinion and judgment. *Id.* ¶ 23. She included the information in the memorandum to ensure Administrator Dickson had a full and complete understanding of the unruly passenger situation in preparation for his meeting with Representatives DeFazio and Larsen. *Id.*

38. The material that Ms. Howard included in the memorandums was based on her observations, research, and her regular conversations with congressional staff members. *Id.* ¶ 24.

39. FAA's supplemental release of the non-redacted portions of the memorandum has had a chilling effect on Ms. Howard's capacity to prepare similarly frank and open memoranda. *Id.* ¶ 32. Following release of the memorandum, she has altered the types of information that she puts into similar briefing memoranda. *Id.*

40. Releasing the information withheld under Exemption 5 located at Bates Numbers 0011-0012 and 0019-20 would reveal Ms. Howard's assessment of what information she deemed significant in the course of preparing the FAA Administrator for his meeting with Members of Congress. *Id.* ¶ 33. Accordingly, its release would have a further and more profound chilling effect than the effect of what has already been released on Ms. Howard's ability to provide similar information to prepare the Administrator for discussions with Congressmen via briefing memorandums as she will be less able to provide candid speculation, opinion, and information based on her professional observations and judgment. *Id.* ¶ 32.

41. Similarly, releasing the withheld information would have a chilling effect on other individuals within FAA who brief FAA management and leadership as they would be less inclined to provide open and frank opinions and selected observations via memorandums. *Id*. ¶ 34.

42. When preparing FAA leadership for external meetings, it is imperative that FAA employees be able to engage in the deliberative process in a frank and open way without fear of their comments and professional judgments being aired. *Id*.

43. The information withheld under Exemption 5 located in the draft version of the memorandum at Bates Number 0023 was not included in the version of the memorandum located at Bates Number 0011-17. *Id*. ¶ 38-39.

44. The information withheld under Exemption 5 at Bates Number 0023 includes the name of an airline that, at the time, Ms. Howard thought had not banned alcohol on D.C. area flights. *Id* ¶ 40.

45. After she authored the draft memorandum located at Bates Number 0019-23, Ms. Howard was able to determine that her understanding that this airline had not banned alcohol on D.C. area flights was incorrect. *Id*.

46. Releasing incorrect information about an airline in a memorandum authored by FAA personnel would cause confusion on the part of the general public. *Id*.

47. When conducting its initial review, FAA Government and Industry Affairs staff reviewed the documents and determined that both versions of the memorandum should be withheld in their entirety on the basis that they are deliberative and pre-decisional memorandums provided to Administrator Dickson to use in deciding what he will communicate in the meeting with Representatives DeFazio and Larsen. *Id*. ¶ 35.

48. After Ms. Howard was notified that Plaintiffs asked FAA to reconsider redactions, Ms. Howard, members of her staff, and others conducted a line-by-line re-review of the two records. *Id*. ¶ 36.

49. After the re-review, a substantial amount of additional text that had been previously withheld under Exemption 5 was released to Plaintiffs in the interest of transparency via the FAA's November 2020 supplemental production. *Id.*

50. FAA released all reasonably segregable, non-exempt responsive information subject to the FOIA. Sympniewski Decl. ¶¶ 30-32; Howard Decl. ¶¶ 35-36.

Dated: May 17, 2023                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Principal Deputy Assistant Attorney General
                                       Civil Division

                                       MARCIA BERMAN
                                       Assistant Branch Director

                                       */s/ Liam C. Holland*
                                       LIAM C. HOLLAND
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, N.W.
                                       Washington, D.C. 20005
                                       Tel: (202) 514-4964
                                       Email: liam.c.holland@usdoj.gov

                                       *Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JASON LEOPOLD, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>TRANSPORTATION, et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 21-cv-581 (CJN) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    I.     Plaintiffs' FOIA Request to FAA and FAA's Response ...................................2

    II.    Procedural Background.....................................................................................3

    III.   The Records at Issue .........................................................................................4

STANDARD OF REVIEW....................................................................................................5

ARGUMENT .......................................................................................................................6

    I.     FAA Properly Withheld Information Pursuant to Exemption 5.............................6

    II.    FAA Complied with the Foreseeable Harm Standard. .......................................10

    III.   FAA Released All Reasonably Segregable, Non-Exempt Information................12

CONCLUSION....................................................................................................................13

# **TABLE OF AUTHORITIES**

## **CASES**

*Access Reps. v. U.S. Dep't of Just.*,
    926 F.2d 1192 (D.C. Cir. 1991)..................................................................7, 8, 10

*Am. Civ. Liberties Union v. CIA*,
    C.A. No. 1:18-cv-2784 (CJN), 2022 WL 306360 (D.D.C. Feb. 2, 2022)..................................9

*Am. Ctr. for L. and Just. v. U.S. Dep't of Just.*,
    325 F. Supp. 3d 162 (D.D.C. 2018)........................................................................13

*Bloomberg, L.P. v. U.S. Secs. and Exchange Comm'n*,
    357 F. Supp. 2d 156 (D.D.C. 2004)...........................................................................7

*Citizens for Resp. and Ethics in Washington v. GSA*,
    C.A. No. 18-2071 (CKK), 2021 WL 1177797 (D.D.C. Mar. 29, 2021)..............................9, 10

*Citizens for Resp. and Ethics in Washington v. U.S. Dep't of Homeland Sec.*,
    648 F. Supp. 2d 152 (D.D.C. 2009)...........................................................................6

*Coastal States Gas Corp. v. U.S. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980).........................................................................6, 7, 12

*Competitive Enter. Inst. v. EPA*,
    12 F. Supp. 3d 100 (D.D.C. 2014)..........................................................................10

*Competitive Enter. Inst. v. U.S. Dep't of State*,
    No. 17-cv-02032 (APM), 2022 WL 4547959 (D.D.C. Aug. 10, 2022)...................................9

*Defs. of Wildlife v. U.S. Border Patrol*,
    623 F. Supp. 2d 83 (D.D.C. 2009)............................................................................5

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001)........................................................................................6, 11

*Diamond v. Atwood*,
    43 F.3d 1538 (D.C. Cir. 1995)................................................................................5

*Dudman Commc'ns Corp. v. Dep't of Air Force*,
    815 F.2d 1565 (D.C. Cir. 1987)...............................................................................8

*EPA v. Mink*,
    410 U.S. 73 (1973)......................................................................................6, 11

*FBI v. Abramson*,
456 U.S. 615 (1982) ................................................................................................5

*FPL Grp., Inc. v. IRS*,
698 F. Supp. 2d 66 (D.D.C. 2010) ......................................................................6, 7

*Frontier Found. v. U.S. Dep't of Just.*,
890 F. Supp. 2d 35 (D.D.C. 2012) ..........................................................................8

*Gold Anti-Trust Action Comm. v. Bd. of Governors of Fed. Rsrv. Sys.*,
762 F. Supp. 2d 123 (D.D.C. 2011) ........................................................................7

*Heggestad v. United States Dep't of Just.*,
182 F. Supp. 2d 1 (D.D.C. 2000) ............................................................................7

*Juarez v. Dep't of Just.*,
518 F.3d 54 (D.C. Cir. 2008) ................................................................................13

*Jud. Watch, Inc. v. Dep't of Just.*,
365 F.3d 1108 (D.C. Cir. 2004) ..............................................................................6

*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
736 F. Supp. 2d 202 (D.D.C. 2010) ......................................................................10

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) ................................................................................5

*Leopold v. Dep't of Justice*,
No. 21-cv-942-TNM-ZMF, 2023 WL 1875229 (D.D.C. Jan. 26, 2023) ...........8, 11

*Leopold v. Off. of Dir. Of Nat'l Intel.*,
442 F. Supp. 3d 266 (D.D.C. 2020) ........................................................................8

*Machado Amadis v. U.S. Dep't of State*,
971 F.3d 364 (D.C. Cir. 2020) ........................................................................11, 12

*McKinley v. FDIC*,
744 F. Supp. 2d 128 (D.D.C. 2010), *aff'd sub nom. McKinley v. Bd. of Governors of Fed.
Rsrv. Sys.*, 647 F.3d 331 (D.C. Cir. 2011) ..............................................................7

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ..............................................................................12

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
402 F. Supp. 2d 211 (D.D.C. 2005) ................................................................12, 13

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975)......................................................................................................6, 11

*Quarles v. Dep't of Navy*,
    893 F.2d 390 (D.C. Cir. 1990).............................................................................................8

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) .............................................................................................11

*Rockwell Int'l Corp. v. U.S. Dep't of Just.*,
    235 F.3d 598 (D.C. Cir. 2001)............................................................................................6

*Russell v. Dep't of the Air Force*,
    682 F.2d 1045 (D.C. Cir. 1982).........................................................................................11

*Sierra Club v. U.S. Dep't of Interior*,
    384 F. Supp. 2d 1 (D.D.C. 2004).......................................................................................10

*Sussman v. U.S Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007).........................................................................................13

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997)............................................................................................7

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    141 S. Ct. 777 (2021)...............................................................................................6, 7, 11

*Williams & Connolly v. SEC*,
    662 F.3d 1240 (D.C. Cir. 2011).........................................................................................13

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007)........................................................................................5, 6

## STATUTES

5 U.S.C. § 552.................................................................................................... 5, 6, 10, 12

## RULES

Fed. R. Civ. P. 56.................................................................................................................5

## LEGISLATIVE MATERIALS

H.R. Rep. No. 114-391 (2016) ...........................................................................................10

S. Rep. No. 114-4 (2015) ...................................................................................................10

## <u>REGULATIONS</u>

Freedom of Information Act,
   74 Fed. Reg. 4683 (Jan. 21, 2009) ........................................................................10

**INTRODUCTION**

Plaintiffs in this Freedom of Information Act ("FOIA") case, Jason Leopold, and BuzzFeed, Inc. (collectively, "Leopold"), filed FOIA requests with a multitude of federal agencies seeking a broad array of records that have some relationship to the January 6 attack on the U.S. Capitol. This case focuses on Leopold's FOIA request to the Federal Aviation Administration ("FAA").

After producing over two hundred pages of responsive material, the FAA withheld portions of a few responsive documents under FOIA Exemption 5 because they are squarely protected from disclosure by the deliberative process privilege. Specifically, the remaining dispute in this matter is limited to narrow redactions within two sets of material. The first set of material was generated by FAA personnel after an FAA employee sent an e-mail to the FAA Administrator providing his views on the state of the country in light of the insurrection on January 6, 2021. The disputed redactions are minimal portions of an e-mail thread among FAA personnel deliberating whether and how Administrator Dickson should respond to the e-mail.

The other material that FAA narrowly redacted in part consists of a briefing memorandum and an earlier, draft version of the same memorandum, for the FAA Administrator drafted by FAA's Deputy Assistant Administrator for Government and Industry Affairs. The briefing memorandum was provided to the FAA Administrator to prepare him to speak with members of Congress to discuss disruptive passenger events involving people who were traveling to or from Washington, D.C., to participate in the events that took place on January 6, 2021, and in the period surrounding the inauguration of President Biden. These communications, reflecting predecisional deliberative information concerning governmental decision-making, are protected by the deliberative process privilege.

Because the FAA's declarations establish that the redacted material is protected by Exemption 5 and all segregable material has been produced to Plaintiffs, FAA has fully complied with its obligations under the FOIA. The Court should therefore grant summary judgment for

Defendants.

## BACKGROUND

### I.    Plaintiffs' FOIA Request to FAA and FAA's Response

This case concerns one of dozens of similar FOIA requests submitted by Leopold to agencies throughout the Federal Government.[1]  The request at issue in this case was submitted to FAA and dated January 12, 2021.  *See* Compl. ¶ 7, ECF No. 1.  The request was broad.  It included six paragraphs.  ECF No. 1-1 at 1.  In paragraph one, the requests sought the "call logs, calendar and briefing book from the Administrator, Deputy Administrator, Chief of Staff, Office of General Counsel."  *Id*.  Paragraph two of the FOIA request sought "[a]ll records . . . mentioning or referring to the planning of protests in Washington, DC on January 6, 2021 by supporters of President Donald Trump . . ."  *Id*.  Paragraph three of the FOIA request (which was misnumbered) sought "[a]ll records . . . mentioning or referring to the January 6, 2021, protests in Washington, DC, the speech by President Donald Trump at this protest and the insurrection, the siege, STORM THE CAPITOL, that took place at the Capitol building in Washington, DC on January 6, 2021."  *Id*.  Paragraph four of the FOIA request sought "[p]hotographs and audio and video of these January 6, 2021 protests and the siege/insurrection that took place[.]"  *Id*.  Paragraph five of the FOIA request sought "[a]ll records . . . mentioning or referring to Million MAGA March."  *Id*.  Finally, paragraph six sought "[a]ll records mentioning or referring to tweets by Donald Trump that contain

---

[1] *See, e.g.*, Compl., *Leopold v. U.S. Dep't of Justice*, No. 1:21-cv-00558, ECF No. 1 (D.D.C. Mar. 3, 2021) (addressing similar request to thirty-one agencies); Am. Compl., *Leopold v. U.S. Dep't of Justice*, No. 1:21-cv-00942, ECF No. 6 (D.D.C. Apr. 27, 2021) (addressing similar request to the Executive Office of Immigration Review and DOJ's Professional Responsibility Advisory Office); Am. Compl., *Leopold v. U.S. Dep't of Homeland Security*, No. 1:21-cv-545, ECF No. 17 (D.D.C. Apr. 27, 2021) (addressing similar request to nine defendants in the Department of Homeland Security umbrella, including the Secret Service, the Transportation Security Administration, U.S. Customs and Border Protection, and the Federal Emergency Management Agency); Compl., *Leopold v. U.S. Dep't of Defense*, No. 1:21-cv-00577, ECF No. 1 (D.D.C. Mar. 4, 2021) (addressing similar request to the Department of Defense, National Guard Bureau, and U.S. Army); Compl, *Leopold v. U.S. Dep't of Interior*, No. 1:21-cv-00579, ECF No. 1 (D.D.C. Mar. 4, 2021) (addressing similar request to the Department of the Interior and the National Park Service).

2

the words PROTESTS, RALLY, RALLIES, ELECTION FRAUD, FRAUD, JANUARY SIXTH."
*Id*.

In an e-mail dated January 14, 2021, Leopold clarified the scope of custodians involved with the request.  ECF No. 1-1 at 5.  Specifically, the request sought materials from employees earning income at the General Schedule Grade 15, Senior Executive Service employees, and political appointees.  *Id*.  On January 19, 2021, FAA acknowledged receipt of the request and assigned it a reference number.  ECF No. 1-1 at 10.  Leopold later agreed to exclude certain news-related materials from the scope of the request.  ECF No. 10 at 2.

By September 2021, FAA had completed an initial search.  *Id*. at 1.  FAA made an interim production of responsive, nonexempt records to Leopold on November 5, 2021, and directed the remaining potentially responsive records to another agency for consultation or direct response to Leopold.  ECF No. 11.  On June 16, 2022, FAA issued its final production of responsive, nonexempt materials to Leopold.  ECF No. 14.  After the final production, FAA agreed to reconsider some of its withholdings given the progress of prosecutions and congressional hearings related to the events on January 6, 2021.  *See* ECF No. 15.  After completing its reconsideration, FAA issued a supplemental response to Leopold in November 2022, ECF No. 18; Declaration of Jessica Sypniewski ("Sypniewski Decl.") ¶ 11, and a second supplemental response to Leopold in April 2023, Declaration of Katherine Howard ("Howard Decl.") ¶ 10.

FAA withheld certain information under Exemption 5 (as well as other exemptions that are not in dispute).  Specifically, FAA withheld information under the deliberative process privilege.

**II.    Procedural Background**

On March 4, 2021, Leopold initiated this action by filing a one-count complaint raising claims that the FAA violated the FOIA.  Compl. ¶¶ 19-23.  After FAA issued its final production of responsive materials to Leopold in June 2022, the parties narrowed the issues in dispute in this matter to whether each FAA application of FOIA Exemption 5 was valid.  ECF No. 15.  On March 15, 2023, the Court granted in part the parties' joint motion and set a briefing schedule for cross-

motions for summary judgment.  *See* Minute Order (Mar. 15 2023).

## III.    The Records at Issue

Although the FAA has released over two hundred pages of responsive records to Leopold, only two sets of material include disputed redactions of information withheld under FOIA Exemption 5.  The first set of material relates to an e-mail from an FAA employee that was sent to the FAA Administrator on January 9, 2021.  Sypniewski Decl. ¶ 13; Bates Number 0007-08.[2] The employee's email included a number of comments that are related to the insurrection that occurred on January 6, 2021.  *See* Bates Number 0007-08.  For example, the employee opined that "[t]he storming of the Capital should be no less heartbreaking than the blatant disregard of law & lack of integrity to our national electoral process, & its assault on the U.S. Constitution."  *Id*. at 0007.  After receiving the employee's email, FAA personnel, including Deputy Administrator for the Office of Communications Jeannie Shiffer, FAA Chief of Staff Angela Stubblefield, and FAA Deputy Chief Of Staff/Senior Advisor Danny Blum, deliberated about what advice to provide the Administrator about responding to the e-mail.  *See* Sypniewski Decl. ¶¶ 14-16; Bates Number 0001-0006.  The FAA redacted part of this e-mail correspondence pursuant to Exemption 5.

The second set of material relates to requests for information that the Chairmen of the House Transportation and Infrastructure Committee and Aviation Subcommittee made to the FAA Administrator.  Howard Decl. ¶¶ 16-18, 23-25, 27; Bates Number 0010-0023.  Specifically, the Chairmen requested that the FAA Administrator join them on a call on January 11, 2021, to discuss how FAA is addressing disruptive passenger events involving people who were traveling to or from Washington DC as part of the events of January 6, 2021.  Howard Decl. ¶ 27; Bates Number 0011.  In preparation for the call, Deputy Assistant Administrator for Government and Industry Affairs Katherine Howard prepared a briefing memorandum for the Administrator.  Howard Decl. ¶¶ 18, 27; Bates Number 0011-017.  The briefing memorandum included suggested responses to

---

[2] Defendants' references to information at issue throughout this brief uses the Bates numbering in the material filed with this motion.

likely questions for the Administrator's consideration and additional talking points. *See, e.g.* Bates Number 0011-0017. The FAA redacted part of this briefing memorandum under Exemption 5. *See* Bates Number 0011-12. Specifically, the withheld information addresses Howard's "speculation" about the positions of several aviation policy stakeholders on some of the proposals that the Chairmen wanted to discuss with the FAA Administrator. Howard Decl. ¶¶ 23-24, 31. FAA also produced as responsive an early draft of the same memorandum. Bates Number 0018-23. In addition to the same withheld information as the later draft, FAA withheld information in the early draft about one airline that was later determined to be inaccurate. Howard Decl. ¶ 40.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Where, as here, the parties are cross-moving for summary judgment, the Court conducts a *de novo* review of the agency's response to the challenged FOIA requests. *See* 5 U.S.C. § 552(a)(4)(B).

FAA must justify any information withheld subject to FOIA's statutory exemptions. Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C.

5

Cir. 2007) (citation omitted).

## ARGUMENT

## I.    FAA Properly Withheld Information Pursuant to Exemption 5.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  "[T]his exemption incorporates the privileges available to Government agencies in civil litigation.  That list includes the deliberative process privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp.* v. *U.S. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001).

Documents covered by the deliberative process privilege and exempt under Exemption 5 include those "'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formatted.'" *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785 (quoting *Sears*, 421 U.S. at 150).  It "protect[s] agencies from being 'forced to operate in a fishbowl[.]'" *Id.* (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).  And it is "rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *Id.* (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

The deliberative process privilege is designed to prevent injury to the quality of agency decision by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for the agency's decision.  *See Sears*, 421 U.S. at 151-53; *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Citizens for Resp. and Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp., Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010).

Examples of documents covered by the deliberative process privilege include recommendations, draft documents, proposals, suggestions, advisory opinions and other documents such as email messages, that reflect the personal opinions of the author rather than the policy of the agency. *See Bloomberg, L.P. v. U.S. Secs. and Exchange Comm'n*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the withheld information is both pre-decisional and deliberative. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785-86; *Access Reps. v. U.S. Dep't of Just.*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States Gas*, 617 F.2d at 866; *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). "Documents are 'predecisional' if they were generated before the agency's final decision on the matter[.]" *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786 (citation omitted). To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the document at issue in the course of that process.'" *Heggestad v. United States Dep't of Just.*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868); *see Gold Anti-Trust Action Comm. v. Bd. of Governors of Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.").

Documents are "'deliberative' if they were prepared to help the agency formulate its position." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786 (citation omitted). In other words, a deliberative document "'reflects the give-and-take of the consultative process.'" *McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010), *aff'd sub nom. McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*, 647 F.3d 331 (D.C. Cir. 2011) (quoting *Coastal States Gas*, 617 F.2d at 866). The privilege protects factual material if it is "inextricably intertwined" with deliberative material, *FPL*, 698 F. Supp. 2d at 81, or if disclosure "'would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the

7

agency's ability to perform its functions.'" *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)); *Elec. Frontier Found. v. U.S. Dep't of Just.*, 890 F. Supp. 2d 35, 47-53 (D.D.C. 2012). "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reps.*, 926 F.2d at 1195 (quoting *Dudman*, 815 F.2d at 1567-68).

The deliberative discussions about whether and how the FAA Administrator should respond to an e-mail from an FAA employee and the briefing memoranda prepared to advise the Administrator in advance of a call with members of Congress fall squarely within Exemption 5's protection for pre-decisional, deliberative information. Sypniewski Decl. ¶¶ 14-29, 33-35; Howard Decl. ¶¶ 16-40. These materials do not convey final agency viewpoints but rather different considerations, opinions, options and approaches that preceded the agency's decisions. Sypniewski Decl. ¶¶ 14-29, 33-35; Howard Decl. ¶¶ 14-40.

FAA properly asserted the deliberative process privilege with respect to communications about whether and how the FAA Administrator should respond to an e-mail from an FAA employee. The withheld information is pre-decisional because it predates the FAA's decision about whether and how to respond to the employee's e-mail. It is deliberative because it reflects FAA staff discussions and recommendations about whether and how to respond to the e-mail. Sypniewski Decl. ¶¶ 14-29. "[T]he overwhelming consensus among judges in this District is that the deliberative process privilege protects agency deliberations about public statements." *Leopold v. Dep't of Justice*, No. 21-cv-942-TNM-ZMF, 2023 WL 1875229, at *6 (D.D.C. Jan. 26, 2023) (cleaned up) (quoting *Leopold v. Off. of Dir. Of Nat'l Intel.*, 442 F. Supp. 3d 266, 276 (D.D.C. 2020)). "The same reasoning applies—with greater force—to agency deliberations about internal personnel decisions." *Id*. Accordingly, FAA properly invoked Exemption 5 to withhold materials subject to deliberative process privilege.

Similarly, FAA properly asserted the deliberative process privilege with respect to

information in the briefing memoranda. In the briefing memoranda, FAA withheld information in an internal memorandum about how to respond to a congressional inquiry regarding an uptick in disruptive passenger events. Howard Decl. ¶¶ 16-40. The author of the briefing memoranda, FAA Deputy Assistant Administrator for Government and Industry Affairs Katherine Howard, has submitted testimony establishing the predecisional and deliberative nature of agency's withholdings. *Id*. ¶¶ 1, 16-40. The withheld information is pre-decisional because it predates the Administrator's potential response to the congressional inquiry regarding an uptick in passenger events. Further, it is deliberative because it reflects of Howard's "judgment as to what was significant to the issue being addressed," *id*. ¶¶ 23-24, reflecting Howard's personal opinions rather than the policy of the agency. Indeed, Howard's "speculation on and interpretation of industry stakeholder positions" that she "believed best served [the FAA Administrator]" as he prepared for a meeting with Congressmen falls at the heart of the agency's decision-making process regarding the Administrator's potential response to the Congressmen. *See id*. ¶¶ 27-28, 31. It is also deliberative because its release would reveal Ms. Howard's "assessment of what information she deemed significant in the course of preparing the FAA Administrator" and thereby chill her ability to provide candid discussion within FAA. *Id*. ¶¶ 32-33. Moreover, the process by which the memorandum evolved into the form presented to the FAA Administrator—including initial inclusion of incorrect information ultimately deleted, *id*. ¶¶ 39-40—is deliberative in nature.

Indeed, courts in this district routinely find the deliberative process privilege applicable to deliberations about potential agency responses to congressional inquiries. *See, e.g., Competitive Enter. Inst. v. U.S. Dep't of State*, No. 17-cv-02032 (APM), 2022 WL 4547959, at *6 (D.D.C. Aug. 10, 2022) (upholding application of the deliberative process privilege to documents related to whether and how the agency might respond to letter from Senator); *Am. Civ. Liberties Union v. CIA*, C.A. No. 1:18-cv-2784 (CJN), 2022 WL 306360 at *8 (D.D.C. Feb. 2, 2022) (upholding application of deliberative process privilege to "preliminary communications in response to Senate . . . inquiries"); *Citizens for Resp. and Ethics in Washington v. GSA*, C.A. No. 18-2071 (CKK),

2021 WL 1177797, at *9 (D.D.C. Mar. 29, 2021) (upholding application of deliberative process privilege to communications regarding how agency "'would move forward with responding to questions for the record' from [a] U.S. Senate Committee") (citation omitted); *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 119-21 (D.D.C. 2014) (upholding application of the deliberative process privilege to communications regarding interactions with Congress, including a document containing information and advice for a proposed meeting with a Senator); *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 207-09 (D.D.C. 2010) (finding agency properly asserted the privilege over "recommendations and evaluations for how to respond to Congressional . . . requests for information."); *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 19 (D.D.C. 2004) (concluding that materials were "privileged under Exemption 5 because they constitute recommendations from staff as to how agency officials might handle congressional inquiries"); *see also Access Reps.*, 926 F.2d at 1196-97 (protecting memorandum written to prepare senior agency officials for Congressional testimony).

## II.    FAA Complied with the Foreseeable Harm Standard.

FOIA provides that an agency shall withhold information only if it "reasonably foresees that disclosure would harm an interest protected by an exemption" identified in the FOIA." 5 U.S.C. § 552(a)(8)(A)(i)(I). The provision directs agencies to assess "whether an agency has reasonably foreseen a specific, identifiable harm" before making a disclosure determination with respect to certain exemptions. H.R. Rep. No. 114-391, at 9. Section 552(a)(8)(A)(i)(I) codified existing government policy that had been in place for the better part of a decade. *Id*. at 9 (noting that the policy was established by executive memoranda in 2009); S. Rep. No. 114-4 at 8 (same); Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 21, 2009) (presidential memorandum). As Congress acknowledged, this provision "does not alter the scope of information that is covered under an exemption." H.R. Rep. No. 114-391, at 10. Rather, § 552(a)(8)(A)(i)(I) simply requires agencies to "concretely explain[] how disclosure would—not could—adversely impair" the

interest protected by an exemption. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021); *see also Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (finding "agency correctly understood the governing legal requirement and reasonably explained why it was met"); *Leopold*, 2023 WL 1875229, at *7 (finding agency satisfied requirement).

FAA's declarations easily meet this standard with regard to its limited withholdings. The deliberative process privilege aims "[t]o protect agencies from being 'forced to operate in a fishbowl.'" *U.S. Fish and Wildlife Serv.*, 141 S. Ct. at 785 (quoting *Mink*, 410 U.S. at 87). It protects an interest in enhancing "'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 9 (quoting *Sears*, 421 U.S. at 151). The deliberative process privilege also "protects the public from the confusion that would result from premature exposure to discussions occurring before" a final decision has been made. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982). FAA's declarations explain in detail how disclosure of the information at issue would foreseeably harm the interests protected by these privileges.

Release of the deliberative communications about whether and how the FAA Administrator should respond to an e-mail from an FAA employee would harm interests protected by the FOIA. Specifically, those who engaged in the conversation would—not could—be less likely to provide candid advice addressing how the Administrator should respond to communications from employees raising sensitive issues about politically-charged events in the future. Sypniewski Decl. ¶ 35; *see also Machado Amadis*, 971 F.3d at 371. "[T]he FAA is often placed in a position to have to quickly react to similarly politically charged events" and "it is critical that advisors closest to the FAA Administrator feel free to share perspectives regarding sensitive matters without fear that their opinions and advice will become available to the public, the FAA workforce, and the press." Sypniewski Decl. ¶ 34. In this case, the advisors included the FAA Chief of Staff, the Acting Chief Counsel, and the Deputy Associate Administrator for Communications.

In her declaration, the author of the briefing memoranda—Ms. Howard—testifies that release of the redacted information in the document and the early draft of the document "will"— not might—profoundly chill her "ability to provide similar information to prepare the Administrator for discussions with Congressmen via briefing memorandums as [she] will be less able to provide candid speculation, opinion, and information based on [her] professional observations and judgment." Howard Decl. ¶ 32; *see also Machado Amadis*, 971 F.3d at 371. In fact, Howard testifies that FAA's decision to discretionarily release other parts of the briefing memorandum have already had a chilling effect at FAA. *See* Howard Decl. ¶ 32 ("[F]ollowing the release of the memorandum, I have altered the types of information that I put into similar briefing memos."). And release of the additional redacted material in an earlier draft of the memorandum "would cause confusion on the part of the general public" because the redacted information "includes the name of an airline that" the draft memorandum incorrectly asserts "had not banned alcohol on D.C. area flights." *Id.* ¶ 40; *see also Coastal States Gas Corp.*, 617 F.2d at 866 (explaining that "protect[ing] against confusing the issues and misleading the public" is at the heart of the interests protected by the privilege).

In sum, disclosure of the redacted information would result in foreseeable harms falling within the heart of the interests protected by the deliberative process privilege. FAA thus properly withheld that information pursuant to Exemption 5.

## III.    FAA Released All Reasonably Segregable, Non-Exempt Information.

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). But this provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc.*

*v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005).  And a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated."  *Juarez v. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Consistent with this obligation, FAA conducted a thorough review of the documents at issue and concluded that there is no additional, non-exempt information that may reasonably be segregated and released without undermining the FAA's deliberative process.  *See* Sypniewski Decl. ¶¶ 30-32; Howard Decl. ¶¶ 35-36.  This segregability conclusion is evident from an examination of the released documents: redactions are very limited in scope and, indeed, FAA has decided not to redact much additional material that is protected by FOIA Exemption 5.  *See* Bates Number 0001-0023.  Because Ms. Sypniewski's and Ms. Howard's declarations establish that all reasonably segregable, non-exempt information has been released, summary judgment should be granted for Defendants.  *See Sussman v. U.S Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (noting "presumption" that agencies "complied with the obligation to disclose reasonably segregable material").

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment for the Department of Transportation and the Federal Aviation Administration.[3]

---

[3] Because the "parties have narrowed the issues in this case to whether each application of FOIA Exemption 5 was valid," ECF No. 15 at 1, any remaining elements of the claim in Count I, Compl. ¶¶ 19-23, are moot.  *See Williams & Connolly v. SEC*, 662 F.3d 1240, 1243-44 (D.C. Cir. 2011); *see also Am. Ctr. for L. and Just. v. U.S. Dep't of Just.*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("[W]here sophisticated parties to a FOIA case have agreed to narrow the issues in a written status report, they generally may be held to their agreement under traditional waiver principles.").

Dated: May 17, 2023                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Principal Deputy Assistant Attorney General
                                       Civil Division

                                       MARCIA BERMAN
                                       Assistant Branch Director

                                       */s/ Liam C. Holland*
                                       LIAM C. HOLLAND
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, N.W.
                                       Washington, D.C. 20005
                                       Tel: (202) 514-4964
                                       Email: liam.c.holland@usdoj.gov

                                       *Counsel for Defendants*

14